[Civ. No. 6889.   Fourth Dist.   Jan. 21, 1963.]

ROY BRISTOW, Plaintiff and Appellant, v. MARJORIE LUTHER BRINSON et al., Defendants and Respondents.

Corfman & Schwab and Robert L. Corfman for Plaintiff and Appellant.

Banyard, Portigal & Hayden, Dennis D. Hayden and Clarence E. Sprague for Defendants and Respondents.

GRIFFIN, P. J.—On September 12, 1958, plaintiff-appellant Roy Bristow and his wife, Ettie May Bristow, were riding as guests in a Ford automobile owned and operated by defendant-respondent Thomas P. Bristow, the brother of Roy Bristow. At the intersection of Fairhaven Avenue and State Highway 55 (or Tustin Avenue), this car collided with a Cadillac automobile operated by defendant-respondent Marjorie Brinson and owned by defendant-respondent Martin L. Brinson. As a result of the accident, Ettie May Bristow died and Roy Bristow was injured. Appellant brought this action against his brother on the theory of willful misconduct and against Marjorie Brinson and Martin L. Brinson, claiming that Marjorie Brinson had been negligent in the operation of the Brinson vehicle.

At the close of plaintiff's case, all defendants made motions for nonsuit. These motions were granted on the theories that: as to defendant Thomas Bristow, his running the stop sign which governed his eastward movement on Fairhaven Avenue did not constitute willful misconduct; as to Marjorie Brinson and Martin L. Brinson, that Marjorie Brinson was not negligent in the operation of the Brinson vehicle. Plaintiff has appealed from the judgment of nonsuit.

The evidence adduced at the trial indicates that the scene of the collision was the intersection of Fairhaven Avenue and State Highway 55, in Orange County. The Bristows were traveling east on Fairhaven Avenue and Marjorie Brinson was traveling south on State Highway 55. Traffic at this intersection is controlled by two standing octagonal reflector stop signs facing east-west traffic on Fairhaven Avenue so as to cause vehicles to stop before crossing State Highway 55.

The roadway of Fairhaven Avenue west of State Highway 55 is 29 feet wide. A solid white center line divides it into a westbound lane 19½ feet wide and an eastbound lane 9½ feet wide, with a 10-foot shoulder. The eastbound lane has a wavy line next to the center line and the word "Stop" was painted on the roadway at the edge of State Highway 55. These markings were badly faded at the time of the collision. In addition, there was a "Stop Ahead" sign and the words "Stop Ahead" were painted on the roadway some 350 to 400 feet back from the intersection facing the eastbound lane of Fairhaven Avenue.

Near the intersection involved, State Highway 55 has two concrete surfaced lanes, each approximately 10 feet wide. On either side there are improved shoulders about three feet wide. These slope off into shallow ditches on both sides of the roadway. A row of eucalyptus trees was located west of the ditch on the west side of State Highway 55. In addition, along the west side of State Highway 55 there was a concrete block wall about 6 feet high. Near the intersection with Fairhaven Avenue, this wall turns west and runs in a westerly direction along the north edge of Fairhaven Avenue. The wall is located so as to make this a blind intersection for cars proceeding in the directions the automobiles here involved were going. The speed limit on State Highway 55 was 55 miles per hour, and it is a through highway. The accident occurred after dark, about 8 p. m. No street lights or artificial illumination was in the vicinity.

Plaintiff testified that he and his wife went with defendant Bristow and his wife (who was also killed in the collision) to visit the latter's son-in-law. During this social visit, there was no unpleasantness and no show of temper. Everyone was in a friendly mood when the two couples began to return home. The accident occurred on the return trip. The plaintiff testified that during this trip defendant Bristow drove in a proper manner until they reached State Highway 55. He stopped his automobile where traffic signals required this. There were no arguments or disputes between the occupants of the Bristow automobile during the drive home. Approaching the scene of the collision, the automobile was traveling at 40 miles per hour. There was no conversation in the car and defendant Bristow was looking straight ahead. Defendant Bristow drove the car through the stop sign without applying his brakes or slowing down. Plaintiff saw the stop sign when,

the car was 20 feet from it, but he said nothing prior to the collision.

Portions of defendant Bristow's deposition were read into the record. He said that he frequently traveled on Fairhaven Avenue and knew the location of the stop sign where Fairhaven crossed State Highway 55. He knew that this was a blind intersection. Portions of Marjorie Brinson's deposition were also read into the record. She said that she had gone out to get some eggs for her mother and was traveling about 45 miles per hour on the return trip as she approached the intersection. Her car had good brakes, its windshield was clean and its headlights were on. As she approached the intersection, she saw a westbound automobile on Fairhaven Avenue stopped back of the stop sign. She saw some headlight beams shining into the intersection in front of her and thought they were from this stopped automobile. She continued on in the right-hand lane. She did not see any other car as she approached the intersection and she did not see the Bristow car at all before the impact.

The Bristow automobile was damaged on the left side and the Brinson vehicle was damaged on the front end. There were no tire skid marks on the highway leading up to the point of impact.

Preliminarily, it must be stated that on an appeal from a nonsuit, the reviewing court must view the evidence in the light most favorable to the plaintiff. In applying this general rule, we must: ". . . resolve every conflict in the testimony in favor of plaintiffs, consider every inference which can reasonably be drawn and every presumption which can fairly be deemed to arise in support of plaintiffs, and accept as true all evidence adduced, direct and indirect, which tends to sustain plaintiffs' case." (*Coates* v. *Chinn,* 51 Cal.2d 304, 305 [322 P.2d 289].)

Testimony adduced pursuant to Code of Civil Procedure, section 2055, is to be treated as evidence in the case insofar as favorable to plaintiff. (*Crowe* v. *McBride,* 25 Cal.2d 318, 319 [153 P.2d 727].) If, after applying the above test, the evidence is sufficiently substantial to support a verdict for the plaintiff, the judgment of nonsuit cannot be sustained.

As was said in the concurring opinion in *Jones* v. *Hotchkiss,* 147 Cal.App.2d 197, 205 [305 P.2d 129]: "However dubious a plaintiff's case may appear to a reviewing court the functions of the jury must be respected and there can be no weighing of the facts beyond the inquiry whether

the case of the plaintiff is entirely devoid of substantial support in the evidence.''

Plaintiff argues that respondent Marjorie Brinson was negligent because she did not observe the beams from the headlights of the Bristow vehicle; that she should have deduced from the movements of these beams of light that the car from which they were emanating was proceeding at a high rate of speed and that it was not stopping; and that she should have taken steps to avoid the collision. It is also argued that respondent Marjorie Brinson should have slowed her vehicle and looked to the right before she entered the intersection because she was aware that it was a blind intersection from that direction.

■■■ Initially, it must be observed that a motorist proceeding along a through street or highway protected by stop signs has the right-of-way at intersections over motorists on intersecting thoroughfares, even as against vehicles approaching from the right. The motorist on the through highway may assume that the driver of a car on the intersecting highway will observe the law. If the law requires the motorist on the intersecting highway to stop, the driver on the through highway may assume that he will stop and yield the right-of-way as the law requires. (*Kirk* v. *Los Angeles Ry. Corp.*, 26 Cal.2d 833, 838-839 [161 P.2d 673, 164 A.L.R. 1]; *Guerra* v. *Balestrieri*, 127 Cal.App.2d 511, 516 [274 P.2d 443]; 59 A.L.R.2d 1220-1222; 5A Am.Jur. § 322, p. 428.) ■■■ Here, therefore, respondent Marjorie Brinson was entitled to assume that all vehicles approaching State Highway 55 from the right or left would stop and yield the right-of-way to her vehicle. It was only after she became aware that approaching vehicles on the intersecting roadway were not going to stop and yield the right-of-way that she had a duty to control her vehicle so as not to collide with such vehicles. Plaintiff asserts that respondent Marjorie Brinson should have observed the headlights of the Bristow vehicle and deduced therefrom that this vehicle was going to proceed through the intersection without stopping. This contention is entirely unwarranted. A vehicle proceeding toward the Bristow vehicle had already stopped to the left of State Highway 55 as Marjorie Brinson approached the intersection. The headlights of this vehicle were shining into the intersection. Of course, the headlights from the Brinson vehicle were also shining into the intersection. It would not seem possible for Marjorie Brinson, proceeding as she was down the highway, to distinguish the lights of a third vehicle

in the intersection, deduce therefrom the speed of the vehicle carrying those headlights, and further deduce the fact that the driver of the vehicle did not intend to stop at the stop sign before entering the intersection.

The earliest time when respondent Marjorie Brinson could have observed the Bristow vehicle was when it appeared from behind the concrete block wall to her right and drove into the intersection. The configuration of the two highways, the location of the wall and the trees next to the wall are such that it would have been impossible for her to have observed the Bristow vehicle for more than a split second prior to the collision. According to the uncontradicted testimony, the Bristow vehicle was traveling 40 miles per hour, or approximately 59 feet per second, and the Brinson vehicle was traveling 45 miles per hour, or 66 feet per second. After reviewing the testimony, the photographs of the intersection and an engineering diagram of the roadways, which were received in evidence, it does not appear to us that more than three-fourths of a second could have elapsed from the time that the two vehicles became visible to the drivers involved and the time of the collision. Of course, it does not affirmatively appear that this is a sufficient length of time for a driver to apprehend the danger involved and to react thereto by avoiding the impending collision. If she had turned off the highway to the right, she would have proceeded through a shallow ditch toward some large trees and a concrete block wall. If she had turned to the left, she would not have avoided the Bristow vehicle and the two vehicles would have jointly collided with the third vehicle which was stopped back of the stop sign on the south side of the intersection. In the case of *Bardin* v. *Case*, 99 Cal.App.2d 137, 143 [221 P.2d 292], the court said:

"The 'circumstances, including the physical evidence,' warrant only one conclusion—that without warning, the Loyd car shot across the road directly into the path of plaintiffs' car, and that plaintiff Mr. Bardin had perhaps a second, at the most, in which to react. Plaintiff driver was not required to anticipate negligence on the part of the other driver [citing *Bingham* v. *Greenamyer*, 25 Cal.App.2d 467 (77 P.2d 867)], nor may he be held guilty of contributory negligence because in a moment of imminent peril he failed to take the course that careful consideration after the fact shows that he ought to have taken [citation]." See also *Flannery* v. *Koch*, 103 Cal. App.2d 55, 59 [228 P.2d 580]. The nonsuit as to respondents Marjorie and Martin L. Brinson was properly granted.

On the other hand, we are convinced that the non-suit as to the defendant Bristow must be reversed. At the time this cause of action arose, section 403 (now § 17158) of the Vehicle Code provided: ''No person who as a guest accepts a ride . . . has any right of action for civil damages against the driver of such vehicle or against any other person legally liable for the conduct of such driver on account of personal injury to or the death of such guest during such ride, unless the plaintiff in any such action establishes that such injury or death proximately resulted from the intoxication or wilful misconduct of said driver.''

In his complaint here, the plaintiff alleges that defendant Bristow: ''. . . wilfully, wantonly and unlawfully failed to stop . . . knowing that as a proximate result of the herein-abovementioned acts, conduct and omissions, . . . injuries to plaintiff and decedent Ettie Mae Bristow would probably occur.''

Considering only the evidence favorable to plaintiff's case, and ignoring all conflicting evidence, the following facts are shown: The defendant Bristow drove his vehicle through the stop sign at a speed of 40 miles per hour. He was familiar with the intersection, knew of the existence of the stop sign and, about 400 feet before reaching the intersection, passed a sign which warned him that the stop sign was immediately ahead. It may be inferred that he saw this warning sign and later saw the stop sign. (*Rubalcaba* v. *Sweeney,* 168 Cal. App.2d 1, 4-5 [335 P.2d 157].) From this evidence, it may be also inferred, and we should infer, that his action in driving through the stop sign was one of deliberate choice and not a result of inadvertence. In the later case of *Goncalves* v. *Los Banos Mining Co.,* 58 Cal.2d 916, 918 [26 Cal.Rptr. 769, 376 P.2d 833], it was said that: ''Wilful misconduct means intentional wrongful conduct, done either with knowledge that serious injury to the guest probably will result or with a wanton and reckless disregard of the possible results.''

At least the question was one of fact to be determined by the court or jury and not one of law. (*Gillespie* v. *Rawlings,* 49 Cal.2d 359 [317 P.2d 601].)

The only question remaining is whether defendant Bristow foresaw, or should have foreseen, that injury to his guests would probably result. Again, there was evidence that defendant Bristow was familiar with the intersection and with State Highway 55, and that he knew, or should have known, of the volume of traffic on that highway. He knew that

traffic coming down the highway from his left would be concealed from him until his car was in the intersection. Knowing this, he ran the hazard presented. In our opinion, these circumstances also presented a question of fact and not one of law.

It has been said in cases that the mere act of running through a boulevard stop sign does not in itself constitute willful misconduct. (*Flannery* v. *Koch, supra,* 103 Cal.App.2d 55 [228 P.2d 580] ; *Mish* v. *Brockus,* 97 Cal.App.2d 770 [218 P.2d 849] ; *Winn* v. *Ferguson,* 132 Cal.App.2d 539 [282 P.2d 515].) However, these holdings do not establish any rule to the effect that under any and every circumstance the act of running through a stop sign may not constitute the active misconduct required for proof of willful misconduct as that term is defined and used in Vehicle Code, section 17158.

Under the facts here presented, the issue of whether or not defendant Bristow was liable for willful misconduct should have been submitted to the court or jury. See *Goncalves* v. *Los Banos Mining Co., supra,* 58 Cal.2d 916; *Browne* v. *Fernandez,* 140 Cal.App. 689 [36 P.2d 122] ; *Munson* v. *Friedman,* 154 Cal.App.2d 73 [315 P.2d 727] ; *Allen* v. *Robinson,* 85 Cal.App.2d 617 [193 P.2d 498].

Judgment for defendants Marjorie L. Brinson and Martin L. Brinson affirmed.

Judgment for defendant Thomas P. Bristow reversed.

Coughlin, J., concurred.

A petition for a rehearing was denied February 18, 1963, and the petition of respondent Thomas P. Bristow for a hearing by the Supreme Court was denied March 20, 1963.